IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEMETRICE HARVEY, §
as Next Friend of §
ARTHUR HARVEY, JR., a Minor, §
 §
    Plaintiff, §
 § Civil Action No. 3:07-CV-1828-D
VS. §
 §
RACETRAC PETROLEUM, INC., §
 §
    Defendant. §

MEMORANDUM OPINION
AND ORDER

In this removed premises-liability case, the dispositive question presented by defendant's motion for summary judgment is whether a reasonable trier of fact could find that defendant was on constructive notice of a condition that posed an unreasonable risk of harm to the plaintiff-invitee. Concluding that it could not, the court grants summary judgment in favor of defendant and dismisses this case with prejudice.

I

Plaintiff Demetrice Harvey ("Demetrice") and her minor son Arthur ("Arthur")[1] entered the premises of a gas station/convenience store operated by defendant RaceTrac Petroleum, Inc. ("RaceTrac"). It is undisputed that she and Arthur were

---

[1] Demetrice has used Arthur's name in publicly-available pleadings filed before and after the December 1, 2007 effective date of Fed. R. Civ. P. 5.2(a)(3), which prescribes the use of a minor's initials rather than his full name. The court will therefore do so as well.

business invitees.[2] While there, Demetrice and Arthur entered the women's restroom. As they were exiting, the door closed on Arthur's right hand, resulting in the amputation of the tip of one of his fingers.[3] Demetrice sues RaceTrac for negligence, relying on a theory of premises liability.

RaceTrac moves for summary judgment on three grounds: (1) an inspection of the door conducted on the afternoon of the incident revealed that there was no defect in the door at the time of the incident; (2) the normal operation of the door did not pose an unreasonable risk of harm to RaceTrac's customers, including Demetrice and Arthur; and, alternatively, (3) even if there were some evidence that there was a defect or malfunction in the door, there is no evidence that RaceTrac knew or reasonably should have known of the alleged danger prior to the incident. Demetrice

---

[2]The reason Demetrice stopped is disputed, but this is an immaterial fact issue for purposes of deciding this motion.

[3]Plaintiffs have not been entirely consistent in explaining how the injury occurred. They allege in their petition that Arthur "was injured when, while opening a bathroom door, [Arthur's] finger was crushed in the edge of the door." Pet. ¶ 9. Within five to ten minutes of the incident, Demetrice told EMS personnel that Arthur "had slammed his finger in a bathroom door[.]" D. App. 43. In describing the incident to emergency room personnel, it was conveyed that Arthur's finger had been "caught in the bathroom door at a convenience store[.]" Id. at 19. Arthur testified in his deposition that he had gotten his finger caught in the hinge-side of the door, where the door connects to the wall, when he was still inside of the bathroom, standing behind the door as his mother opened it. Id. at 11. According to Arthur, the door completely shut before he got his finger out, and he had to yell for his mom to open the door so that he could get his finger out. Id. at 12.

responds that (1) the door was defective, as evidenced by Demetrice's observations and the fact that the door closed with such speed and force as to amputate a human finger; (2) RaceTrac can be charged with constructive knowledge of the dangerous condition; and (3) RaceTrac provided no warning as to the defective and unreasonably dangerous door.

II

Both sides agree that in this diversity case Texas law applies. *See, e.g., Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003). They also brief this case under the standards of Texas premises-liability law, which this court agrees is controlling here. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (explaining difference between two types of premises liability claims).

> [W]hen the injured party is an invitee, . . . the elements of a premises claim are:
> (1) Actual or constructive knowledge of a condition on the premises by the owner or occupier;
> (2) That the condition posed an unreasonable risk of harm;
> (3) That the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and
> (4) That the owner or occupier's failure to use such care proximately caused the plaintiff's injury.

*CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000) (citing, *inter alia*, *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296

(Tex. 1983)). A plaintiff can prove that the defendant knew or reasonably should have known of the danger in one of three ways: by establishing that (1) the defendant had actual knowledge of the condition; (2) the defendant created the condition; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

Because RaceTrac will not have the burden of proof at trial on Demetrice's premises-liability claim, it can move for summary judgment by pointing the court to the absence of evidence of any essential element of Demetrice's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Demetrice must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076. RaceTrac has pointed the court to the absence of evidence that,

before Arthur was injured, it knew or reasonably should have known of the alleged unreasonably dangerous condition presented by the women's restroom door. D. Mot. 6.

III

Demetrice maintains that the women's restroom door was defective and unreasonably dangerous because it closed with such speed and force as to amputate a human finger.[4] She neither contends that RaceTrac had actual knowledge of the allegedly defective door, nor does she posit that RaceTrac created the condition. Rather, she maintains that RaceTrac had constructive knowledge of the unreasonable risk of harm given the proximity of

---

[4]Demetrice states that the defect in the door "suggests *res ipsa loquit[u]r*." P. Br. 6. This assertion is misplaced for at least two reasons. First, the doctrine of *res ipsa loquitur* is inapplicable to the facts of this case. *Res ipsa loquitur* only applies when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). Here, the character of the accident (a child getting his finger caught in a closing door) is the type of accident that could ordinarily occur in the absence of negligence on the part of the door owner. Moreover, at the time of the accident, the allegedly defective door was at least partly, if not entirely, under the control of Demetrice. Second, Demetrice has not established that *res ipsa loquitur* is applicable in premises-liability cases, which require actual or constructive knowledge of a premises defect. *See Hickmon v. Delta Airlines, Inc.*, 1997 WL 538753, at *2 n.5 (N.D. Tex. Aug. 26, 1997) (Fitzwater, J.) (rejecting plaintiff's reliance on *res ipsa loquitur* in a premises-liability case where "[plaintiff] has not established that Texas would apply *res ipsa loquitur* to satisfy the element of premises liability law that requires actual or constructive knowledge of a premises defect.").

RaceTrac's employees to the allegedly defective door. *See, e.g.,* P. Br. 5, 7.[5] Specifically, Demetrice contends that because RaceTrac has identified no fewer than two female employees who worked at the store at the time of the incident, "[i]t follows that at some point in their tenure, the female employees would have used the women's restroom, and observed the unreasonably unsafe door." P. Br. 8. But Demetrice has presented no temporal evidence that would enable a reasonable trier of fact to determine how long before Arthur's injury the door had been in an unreasonably dangerous condition. In other words, although the employees may have used the women's restroom and observed the door, what is determinative under Texas premises liability law is whether they observed the door close with the speed and force that Demetrice maintains made it defective and unreasonably dangerous. This is so because there must be proof of how long the hazard was there before liability can be imposed on a premises owner for failing to discover and rectify or warn of a dangerous condition.

---

[5]In her brief, Demetrice at one point maintains that RaceTrac had constructive notice of the presence of an unreasonable risk of harm based on "engine degreaser." *See* P. Br. 7-8 ("Defendant had constructive knowledge of the presence of an unreasonable risk of harm, *the engine degreaser*, in that the risk existed for a time sufficiently long enough to permit . . . its employees to discover it and correct it, taking into account the proximity of employees to the condition, the conspicuousness of the condition, and the length of time that the condition existed." (emphasis added). Because "engine degreaser" is not at issue in this case, the court assumes that Demetrice intended to posit that the unreasonable risk of harm was "the speed and force" with which the door to the women's restroom closed. *See* P. Br. 6.

In *Wal-Mart Stores* the Supreme Court of Texas addressed the same question that is at issue in this case, stating:

> In this [premises-liability] case, we must decide whether evidence that the premises owner's employee was in close proximity to the dangerous condition right before the plaintiff fell, without more, is legally sufficient to charge the premises owner with constructive notice. We hold that it is not, absent some evidence demonstrating that the condition existed long enough that the premises owner had a reasonable opportunity to discover it.

*Wal-Mart Stores*, 81 S.W.3d at 813. The plaintiff in *Wal-Mart Stores,* like Demetrice, presented no evidence that the premises owner had created the condition or actually knew it was there, and consequently, she was obligated to prove that the unsafe condition (liquid on the floor) had been there for a sufficient period of time for the owner to have a reasonable opportunity to discover it. *See id*. at 814. The *Wal-Mart Stores* plaintiff also argued that she had satisfied this burden by showing an employee's proximity to the spill. The Supreme Court of Texas disagreed, noting that "[t]he rule requiring proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice is firmly rooted in our jurisprudence." *Id*. at 815 (citing cases).

> The so-called "time-notice rule" is based on the premise that temporal evidence best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition. An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it

> was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it. Constructive notice demands a more extensive inquiry. Without some temporal evidence, there is no basis upon which the factfinder can reasonably assess the opportunity the premises owner had to discover the dangerous condition.

*Id.* at 816 (citation omitted). "[T]here must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify or warn of, the dangerous condition." *Id.* "Otherwise, owners would face strict liability for any dangerous condition on their premises, an approach we have clearly rejected." *Id.*

Here, as in *Wal-Mart Stores*, Demetrice has presented no temporal evidence to indicate how long the door existed in its allegedly unsafe condition prior to Arthur's injury. Demetrice merely posits that RaceTrac has identified at least two female employees, and that "[i]t follows that *at some point in their tenure*, the female employees would have used the women's restroom, and observed the unreasonably unsafe door." P. Br. 8 (emphasis added). Although the court could envision a case in which the nature of a defect itself allowed a reasonable trier of fact to infer from circumstantial evidence that an unreasonably dangerous condition had existed for a sufficient period of time to give the owner a reasonable opportunity to discover and remedy it, there is no such evidence here. Consequently, the court holds that

Demetrice has failed to adduce evidence that would enable a reasonable trier of fact to find that RaceTrac knew or reasonably should have known of the unreasonably dangerous condition. Demtrice's premises liability claim must therefore be dismissed. Because the court is dismissing Demetrice's claim for failure to present evidence that RaceTrac had constructive notice of the unreasonably dangerous condition, the court need not address the parties' arguments regarding whether the door was defective and unreasonably dangerous, RaceTrac's objections to Demetrice's affidavit, or Demetrice's allegations that RaceTrac spoliated evidence by replacing the door.

* * *

The court grants RaceTrac's October 1, 2008 motion for summary judgment and dismisses this case with prejudice by judgment filed today.

**SO ORDERED.**

March 6, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE